**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL ACTION FILE NO.** |
| **JACOBY SANCHEZ KEY,** | **1:18-cr-0416-SCJ-AJB** |
| **Defendant.** | |

<u>**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**</u>

Pending before the Court is Defendant Jacoby Sanchez Key's motion to suppress evidence and statements that were obtained during a traffic stop on June 8, 2017. (Mot. to Suppress, Dec. 12, 2018, ECF No. 13.) For the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED**.

I.    <u>**INTRODUCTION**</u>

   A.    **PROCEDURAL HISTORY**

Defendant, Jacoby Sanchez Key, is charged with being a felon in possession of a firearm in violation of 18 U.S.C § 922(g)(1). (Criminal Indictment, Oct. 23, 2018, ECF No. 1.) He moved to suppress the firearm along with any other items that were seized during the June 8, 2017, encounter. [Doc. 13]. The Court held an evidentiary hearing on March 5, 2019. (Tr. of Suppression Proceedings,

March 5, 2019, ECF No. 19.) The Government then filed a brief, (ECF No. 24.) Defendant elected not to file a reply. Email from Allison Dawson, Esq., May 31, 2019 (on file).

**B.    FACTS**

On June 8, 2017, Atlanta Police Department ("APD") Officer Joseph Daniels and his two partners, Officer Moore and Officer Drinkard, were on duty in a marked APD vehicle driving northbound on Lee Street. (Tr. at 4:1-25, 5:1-12, 6:19-32.) At approximately 7:51 PM, Daniels, who was driving, was notified by one of his partners that a vehicle had changed lanes without using the necessary signal. (Tr. at 5:3, 6:6-12.) Daniels testified "there was some medium traffic" and that there were "several cars in the area", but that no accident resulted from the lane change. (Tr. at 22:5-11, 50:13-21.) Daniels began pursuing the vehicle, a Dodge Charger, and when he attempted to get behind it in the right lane, "it shot over all the way to the left-turn lane without using its turn signal and made a left onto Donnelly Avenue at a decently higher speed than normal." (Tr. at 6:13-16, 7:1-2.)

Daniels pursued the Charger onto Donnelly Avenue where he turned on the emergency equipment to initiate a stop for the traffic violations observed by the officers. (Tr. at 7:3-15, 23:4-18, 47:10-16, 50:10-14.) Daniels states that based on the sudden and illegal lane changes and the abrupt left turn, the officers believed

2

that the Dodge Charger was trying to evade them. (Tr. at 27:13-17, 49:8-16.) The Dodge Charger immediately pulled over and the three officers got out to conduct the traffic stop. (Tr. at 7:11-25.)

There were three people in the stopped Dodge Charger, and upon approaching it, the officers "pretty immediately" asked the three occupants for their identification. (Tr. at 8:1-5, 29:18-24, 37:22-38:10, 51:23-52:3.) Defendant Key was sitting in the backseat of the Dodge Charger, and after he handed his identification to Daniels's partner, the officer showed it to the other two officers. (Tr. at 8:15-24, 9:10-18.) They "immediately realized it was not the person sitting in the backseat" because the picture on the driver's license did not look like Key. (Tr. at 9:17-18, 10:1-4, 32:2-21.) The officer asked Key for his date of birth and his answer did not match the date on the driver's license that he had handed the officer. (Tr. at 9:19-20, 55:19-56:1.) Because the officers could not identify him, Key was asked to step out of the vehicle to be detained while the other officers continued engaging the other occupants of the vehicle. (Tr. at 9:23-25, 36:3-6, 38:18-24, 43:4-8.) Before complying with the officer's request, the officers observed Key reached for a bag that was next to him in the backseat. (Tr. at 10:9-24, 34:9-35:13.)

During the traffic stop, the officers smelled marijuana coming from inside the vehicle. (Tr. at 10:7-8, 39:8-21.) The other occupants were subsequently asked

3

to exit the vehicle and the officers conducted a search of the Dodge Charger. (Tr. at 44:11-14.) The officers searched the bag that Key had reached for and found that it contained a loaded firearm, screwdrivers, a mask and gloves. (Tr. at 11:4-5, 44:11-23.) They also found marijuana on the floor of the backseat of the car and on the person of one of other occupants, Squire. (Tr. at 11:6-11,46:1-25.) The firearm that was found inside the bag is the subject of the current case. (Tr. at 58:13.)

The driver of the Dodge Charger, Cook, was charged with possession of the gun that was recovered from the bag and the traffic violations he committed instigating the traffic stop. (Tr. at 47:10-16.) Squire, the front-seat passenger, was charged with possession of marijuana. (Tr. at 46:23-25.) Key was charged with possession of a firearm by a convicted felon, false representation, and first-degree forgery. (Tr. at 54:13-17.)

## II.  **DISCUSSION**

Defendant contends that the law enforcement officers lacked the requisite level of constitutional cause to effectuate the warrantless Fourth Amendment stop, arrest, search and seizure. Citing to *Wong Sun v. United States*, 371 U.S. 471 (1963), he seeks suppression of the evidence, statements, and fruits from the encounter. (Mot. to Suppress, ECF No. 13, at 3.)

4

The Fourth Amendment of the United States Constitution protects individuals from unreasonable search and seizures. U.S. Const. amend. IV; *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). The purpose of the reasonableness standard prescribed in the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions." *See Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978)). Therefore, the permissibility of law enforcement's actions in a search and seizure is judged "by balancing [the] intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interest." *See id.* at 654.

A traffic stop is a seizure within the meaning of the Fourth Amendment. *See Prouse*, 440 U.S. at 653; *Purcell*, 236 F.3d at 1277. Because it is "more analogous to an investigative detention than a custodial arrest," the legality of a traffic stop is analyzed under the standard laid down in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Purcell*, 236 F.3d at 1277. In *Terry*, the Supreme Court prescribed a two-part analysis to determine the reasonableness of the government's intrusion. *Terry*, 392 U.S. at 21. First, the government's interest justifying the intrusion must be evaluated and second, "the police officer must be able to point to specific and

articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *See id*.

The Supreme Court has found that if police detain an automobile and its occupants "pending an inquiry into a vehicular violation," the investigatory stop is lawful under the first part of the *Terry* analysis. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). The Eleventh Circuit has held that a traffic stop is constitutional if it is based on probable cause to believe a traffic violation has occurred or is justified by reasonable suspicion as set out by *Terry*. *See United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009) (quoting *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008)); *United States v. Monzon-Gomez*, 244 Fed. Appx. 954, 959 (11th Cir. Aug. 2, 2007) (stating that the Fourth Amendment does not prohibit officers from making traffic stops based only on visual observations of traffic violations). Further, "[a]n officer need only have sufficient cause to believe that a traffic law has been violated, regardless of the officer's subjective motivations." *United States v. Waller*, No. 1:15-CR-0083-WSD, 2016 WL 356088, at *3 (N.D. Ga. Jan. 28, 2016) (citing *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999)).

Defendant broadly contends that the traffic stop was illegal due to a lack of constitutional cause and subsequently challenges the admissibility of the evidence

6

and statements that flowed from the allegedly unconstitutional encounter. (Mot. to Suppress, at 2-3.) Under *Brendlin v. California*, Defendant has standing to challenge the constitutionality of the traffic stop. *See* 551 U.S. 249, 256-57 (2007) (stating that a traffic stop "curtails the travel a passenger has chosen just as much as it halts the driver" and citing to *Whren v. United States*, 517 U.S. 806, 809-10 (1996) showing that both the driver and passenger brought claims that they were illegally seized). Under the Eleventh Circuit's holding in *United States v. Lee*, 586 F.3d 859, 865 (11th Cir. 2009), however, Defendant, as a passenger with no possessory interest in the vehicle, does not have standing to challenge the search of the interior of the Dodge Charger, *United States v. Dixon*, 901 F.3d 1322, 1338-39 (11th Cir. 2018), but  he may challenge the search of his own property which is within the vehicle. *United States v. Barber*, 777 F.3d 1303, 1305 (11th Cir. 2015); *United States v. Delgado*, 903 F.2d 1495, 1502 (11th Cir. 1990).[1]

The Government bears the burden to prove that the traffic stop was justified based on probable cause or reasonable suspicion. *See United States v. Kelly*, No. 1:13-CR-108-WSD-JSA, 2014 WL 1153375, at *8 (N.D. Ga. Mar. 21, 2014) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984) and *United States v. Tobin*,

---

[1]     The Government asserted no objections to Key's standing to challenge the stop of the vehicle or the search of the bag.

923 F.2d 1506, 1517 n.21, 1520 (11th Cir. 1991)) (Duffy, J., *adopting* Anand, M.J.). The Government argues that the Court should deny Defendant's motion to suppress the evidence and statements obtained from the traffic stop because the stop did not violate the Fourth Amendment as the officers had probable cause and reasonable suspicion to initiate the traffic stop, the request for Defendant's identification did not cause the lawful stop to become unconstitutional, and the scope and duration of the traffic stop did not violate the Fourth Amendment. (Gov't's Post-Evid. Hr'g Resp. to Def.'s Mot. to Suppress, May 6, 2019, ECF No. 24.)

A. **The Officers had Probable Cause and Reasonable Suspicion to Initiate the Traffic Stop**

The Eleventh Circuit has held that "there is probable cause to conduct a traffic stop where an officer observes a defendant commit a non-criminal traffic violation such as speeding or making an illegal lane change." *See United States v. Woods*, 385 Fed. Appx. 914, 916 (11th Cir. July 2, 2010) (citing *Harris*, 526 F.3d at 1338, and *United States v. Pruitt,* 174 F.3d 1215, 1217 n.1 (11th Cir. 1999)). O.C.G.A. § 40-6-123 "mandates a vehicle to signal before changing lanes when other drivers are in the vicinity." *Woods*, 385 Fed. Appx. at 916. Because there were other vehicles within the vicinity,

8

Tr. at 22:5-11, 50:13-21, the lane changes and left turn by the Dodge Charger, all without signaling, were in violation of O.C.G.A. § 40-6-123.[2]

The court in *Woods* found that the officer had probable cause to conduct a traffic stop based solely on the officer's observation of a vehicle's illegal lane change. *See Woods*, 385 Fed. Appx. at 917 ("[S]ince [the officer] testified that he personally observed the traffic infraction, he had probable cause to conduct the initial stop."). The Government contends that the traffic violations committed by the driver of the Dodge Charger observed by the APD officers, alone, was sufficient probable cause to initiate the traffic stop under *Woods* and *Harris*. [Doc. 24 at 8-10.]

The Government further argues that even if there was not sufficient probable cause to initiate the traffic stop, the APD officers at least had "reasonable suspicion,"

---

[2]     O.C.G.A § 40-6-123 provides in part that "(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Code Section 40-6-120 or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section. (b) A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction."  Ga. Code Ann. § 40-6-123 (West).

as described in *Harris*, justifying the stop of the Dodge Charger. [*Id.* at 10 (citing *Harris*, 526 F.3d at 1337-38)]. The Eleventh Circuit has defined reasonable suspicion as being "based on the totality of the circumstances, and it does not require officers to catch the suspect in a crime." *Harris*, 536 F.3d at 1337.

> Instead, a reasonable suspicion of criminal activity may be formed by observing exclusively legal activity. Additionally, the issue is not whether the particular officer involved actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify the investigatory stop.

*Id.*, 536 F.3d at 1337-38 (citations and internal punctuation omitted)*.*

In the present case, the officers observed the Charger change lines twice without signaling, turn left without signaling, "shoot" across two lanes of traffic, make an abrupt left turn, and generally drive in a way that led the officers to believe the driver was trying to evade law enforcement. Based on these observations, the Court concludes that the officers had at least a reasonable suspicion, if not probable cause, to conduct a traffic stop.

**B.      The Request for Defendant's Identification Did Not Cause the Lawful Stop to Become Unconstitutional**

The Supreme Court in *Maryland v. Wilson*, 519 U.S. 408, 414 (1997), found that "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." Because additional

10

occupants could increase the risk of danger to officers, the Supreme Court further held in *Brendlin* that during a traffic stop, law enforcement exercises "unquestioned command of the situation," which includes limiting movements of the occupants that could jeopardize officer safety. *Brendlin*, 551 U.S. at 258. Both the Supreme Court and the Eleventh Circuit have given law enforcement officers broad latitude to control both a vehicle's driver and passengers during the initial stages of a traffic stop in the interest of preventing danger to the officers. *See Johnson*, 555 U.S. at 333-34 (holding that an officer can pat down a passenger of a lawfully stopped vehicle); *Wilson*, 519 U.S. at 414 (holding that during a lawful traffic stop an officer may order a passenger out of the car without reasonable suspicion that the passenger poses a safety risk); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (holding that a driver can be ordered out of the vehicle and patted down if the officer reasonably concludes that the driver is armed and dangerous); *United States v. Clark*, 337 F.3d 1282, 1287 (11th Cir. 2003) (holding that the officer was permitted to detain the passenger of a stopped vehicle).

In *United States v. Jones*, 543 F.2d 1171, 1173 (5th Cir. 1976), the former Fifth Circuit held that "routine inquiries into the ownership of a stopped vehicle, the identity of its driver or occupants, and other such matters by law enforcement

do not constitute custodial investigation."[3] Further, in *Purcell*, the court concluded that an officer may request identification from passengers of a vehicle during a traffic stop to run criminal history checks without violating the Fourth Amendment because it is justified for officer safety. *Purcell*, 236 F.3d at 1278. Citing to *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015), the Government argues that an officer "may need to take certain negligibly burdensome precautions in order to complete his mission safely." [Doc. 24 at 12-13.] Similarly, in the interest of safety, the APD officers in the present case were justified in making the minimally intrusive request for Key's identification, since he was a passenger of the stopped vehicle.

### C.   The Scope and Duration of the Traffic Stop Did Not Violate the Fourth Amendment

The Supreme Court held in *Rodriguez*, 135 S. Ct. at 1615, that an officer may not conduct unrelated checks during an otherwise lawful traffic stop "in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." The Court stated that "a police stop exceeding the

---

[3] **Error! Main Document Only.**    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *See id.* at 1612. Under *Rodriguez*, officers cannot "[complete] all traffic-related tasks expeditiously […] to earn bonus time to pursue an unrelated criminal investigation." *See id.* at 1616.

The Government argues that the officers did not measurably extend the scope and duration of the traffic stop by checking Key's identification, asking a question related to a patently false identification, and then subsequently requesting that Key exit the vehicle. [Doc. 24 at 14-15]. The Court agrees. As a part of the initial stages of the traffic stop, the officers asked for the occupants' identification upon approaching the Dodge Charger. Once Key's identification was noted to be false, one of the officers asked him to exit the vehicle while another officer continued to engage the other occupants. The actions toward Key did not unlawfully extend the traffic stop and, unlike the officers in *Rodriguez*, the APD officers did not rush through the traffic-related tasks to pursue an unrelated criminal investigation. *See Rodriguez*, 135 S. Ct. at 1616.

Further, unlike the actions taken in *Rodriguez* (a dog sniff not based on reasonable suspicion that prolonged the completed traffic stop), asking for identification and detaining a passenger of the vehicle in the interest of officer safety--as was done in this case--are routine procedures for a traffic stop.

13

*See id.* at 1615 ("Candidly, the Government acknowledged at oral argument that a dog sniff, unlike the routine measures just mentioned, is not an ordinary incident of a traffic stop."). But *Rodriguez* still permits an officer to conduct the "mission" of the traffic stop and attend to related safety concerns. *United States v. Burwell*, 763 Fed. Appx. 840, 844 (11th Cir. Feb. 27, 2019); *see also United States v. Campbell*, 912 F.3d 1340, 1353 (11th Cir. 2019) ("We think the proper standard emanating from *Rodriguez* is this: a stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes. . . . That is, to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion.") (citations omitted). Like *Waller*, the inquiry of the officers in the present case took minimal time and was part of the "mission" of the traffic stop as it involved checking Key's identity. *See Waller*, 2016 WL 356088, at *4 (denying the motion to suppress evidence as there was no Fourth Amendment violation because "[t]he facts here show that Officers Sajdak and Daniels, during what can be characterized as a relatively short traffic stop, were engaged in constitutionally permitted conduct within the 'mission' of the stop, including conduct to ensure officer safety," which "includes ordinary computer and identity checks"); *see also Johnson*, 555 U.S. at 333 ("An officer's

14

inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."); *United States v. Warnock*, No. 1:14-CR-15-AT-1, 2018 WL 4927722, at *4 (N.D. Ga. Oct. 11, 2018) ("The Court finds no authority to support a determination that officers unreasonably extended a stop where the officers delayed less than six minutes. Consequently, though the questioning involved topics outside the bounds of the stop […] these questions did not "measurably extend the duration of the stop."). Therefore, there is no valid basis for concluding that the actions of the APD officer unlawfully extended the duration and scope of the traffic stop.

Even if the traffic stop had been prolonged, the officers had a reasonable suspicion of criminal activity that justified further investigation. Daniels testified that the way the Dodge Charger was driving not only provided reasonable suspicion, if not probable cause to believe, that a traffic violation had occurred, but that it appeared the driver of the vehicle intended to evade the police. After the vehicle was stopped, the officers detected the odor of marijuana coming from inside the vehicle. As a result, the officers were entitled to further investigate the vehicle's driver and occupants based on a reasonable suspicion of criminal activity. *See Harris*, 526 F.3d at 1337-38; *United States v. Ward*, 722 Fed. Appx. 953, 963

15

(11th Cir. Jan. 16, 2018) (holding that "the officers had probable cause to search the vehicle based on the smell of marijuana alone"); *United States v. Agarwal*, No. 117CR00043TCBRGV, 2018 WL 3061923, at *1 (N.D. Ga. Apr. 6, 2018 (noting that "an investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion of criminal activity to expand his investigation, even if his suspicions were unrelated to the traffic offense that served as the basis of the stop") (quoting *United States v. Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004))), *report and recommendation adopted*, No. 1:17-CR-043-TCB, 2018 WL 2181620 (N.D. Ga. May 11, 2018).  Moreover, Key's utterance of what appeared to be false identification further justified prolonging the traffic stop.  *See United States v. McGowan*, No. 5:11-CR-424-CLS-PWG, 2012 WL 6609009, at *9 (N.D. Ala. Oct. 30, 2012) (traffic stop properly extended when back seat passenger produced false identification), *report and recommendation adopted*, No. CR 11-S-424-S, 2012 WL 6609008 (N.D. Ala. Dec. 13, 2012).

Finally, probable cause supported the search of the Charger, *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) ("[T]he recognizable smell of marijuana gives rise to probable cause supporting a . . . search."); *United States v. Barnett*, No. 2:08-CR-100-FTM-29SP, 2009 WL 426023, at *10 (M.D. Fla. Feb. 19, 2009) (holding that the officer's smelling of a strong odor of marijuana emanating from

16

the vehicle's interior as he approached the driver's side gave the officer probable cause to search a vehicle without a warrant) (citing *United States v. Griffin*, 109 F.3d 706, 708 (11th Cir. 1999)); as well as the bag in which the firearm at issue in this case was located. *United States v. Smith*, 694 F. Supp. 2d 1242, 1253-54 (M.D. Ala. 2009) ("[A]nother warrantless search exception is the automobile exception wherein officers can search any container within an operational car without a warrant as long as they have probable cause to believe the container holds evidence of a crime.") (citing *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005) (citing, in turn, *California v. Acevedo*, 500 U.S. 565, 579-80 (1991) and *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003)).

Based on the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to suppress, [Doc. 13], be **DENIED**.[4]

## III.   CONCLUSION

For all of the above and foregoing reasons, the undersigned **RECOMMENDS** that Defendant Key's motion to suppress, [Doc. 13], be **DENIED**.

The undersigned has now ruled upon all matters referred pursuant to

---

[4]     Key did not make any post-arrest statements, Tr. at 58:22-23, so the portion of his suppression motion dealing with statements is not further addressed.

Standing Order 14-02 (N.D. Ga. Aug. 15, 2014).  The Court has not been advised of any impediments to the scheduling of the trial as to this defendant.  Therefore, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED, ORDERED and CERTIFIED**, this the 25th day of _ June _, 2019.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE